# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

GCM AIR GROUP, LLC, a Nevada Limited )
Liability Company, )
)   3:07-cv-00168-BES-RAM
        Plaintiff, )
)
v. )
)   **ORDER**
CHEVRON U.S.A., INC., a Pennsylvania )
Corporation, )
)
        Defendant. )

Currently before the Court is Defendant Chevron U.S.A. Inc.'s ("Chevron") Motion for Attorney's Fees (#77) filed on April 8, 2009. Plaintiff GCM Air Group, LLC ("GCM") filed an Opposition to Defendant's Motion for Attorney's Fees (#84) on April 21, 2009, and Chevron filed a Reply in Support of its Motion for Attorneys Fees (#95) on May 5, 2009.

## BACKGROUND

The parties are familiar with the facts of this case. As such, the Court will only state the facts necessary to determine the current motion for attorney's fees.

In 2005, GCM and Chevron entered into an Environmental Agreement for the purpose of monitoring and remediating contamination that occurred as a result of Chevron's retail service station operations on a piece of property acquired by GCM. (Motion for Attorney's Fees (#77) at Exhibit F). According to the Environmental Agreement, the parties wished "to provide for the necessary investigation, site assessment, and clean-up" of the contamination on two adjacent parcels. Id. In the contract, the parties agreed that Chevron would investigate, monitor and remediate the contamination located on the properties acquired by

GCM as directed or agreed to by the Washoe County District Health Department. Id.

The Environmental Agreement included a clause relating to attorney's fees. According to paragraph 13 of that agreement, if "any party to this Agreement should bring an action against the other to enforce the terms of this Agreement, the substantially prevailing party shall be entitled to receive such a sum as reasonable attorney's fees as shall be determined by a Court of competent jurisdiction in said proceeding." Id. at Exhibit F, p. 5.

On April 4, 2007, GCM filed a lawsuit against Chevron based on the contamination and remediation of the subject properties. On August 20, 2007, GCM filed a Second Amended Complaint (#16) which alleged 17 causes of action against Chevron. These claims were based both in contract and in tort. On March 25, 2009, the Court entered an Order (#74) granting Chevron summary judgment on all 17 claims. Chevron now seeks attorney's fees in the amount of $367,596.35 pursuant to the attorney's fees provision in the parties' Environmental Agreement.

## ANALYSIS

A federal court "applies state law in a diversity action to determine whether an award of attorneys' fees is allowed." Canada Life Assur. Co. v. LaPeter, 563 F.3d 837, 847 (9th Cir. 2009). In Nevada, a court "cannot award attorney fees unless authorized by statute, rule or contract." Frank Settelmeyer & Sons, Inc. v. Smith & Harmer, Ltd., 197 P.3d 1051, 1059 (Nev. 2008). In this case, the parties have a contractual provision which provides for an award of attorney's fees to the prevailing party as to the enforcement of the Environmental Agreement.

**I. Apportionment**

Chevron is seeking attorney's fees pursuant to the Environmental Agreement in the amount of $367,596.35. According to Chevron, even though GCM only brought three specific claims relating to the breach of the Environmental Agreement, it is entitled to all of its reasonable attorney's fees incurred in the defense of this case because "the facts underlying all of the claims are intertwined such that it is impracticable to apportion costs between particular claims." (Reply (#95) at 3). Chevron asserts that the core of all of GCM's causes of action are tied to the Environmental Agreement because that agreement dictated the terms

of the remediation following the contamination on the site. Id. Chevron then asserts that the remediation and contamination form the basis of all the other claims asserted against it. As such, Chevron claims that all of the causes of action are interrelated and that its costs to defend against the allegations relating solely to the Environmental Agreement cannot be carved out.[1]

GCM does not dispute that Chevron is entitled to attorney's fees based on the provision in the Environmental Agreement. However, GCM argues that only three claims in the amended complaint relate to that specific contract. Based on this, GCM argues that Chevron's motion for attorney's fees "improperly requests fees that are not associated [with] the Environmental Agreement." (Plaintiff's Opposition to Defendant's Motion for Attorney's Fees (#84) at 3). Because the Environmental Agreement "calls only for attorney's fees to enforce that specific agreement," GCM states that Chevron is "not entitled to fees spent in connection to the other portions of the lawsuit." Id.

Under Nevada law, apportionment of attorney's fees is not mandatory when the fees were incurred for representation on an issue common to both a cause of action in which fees are proper and one in which they are not allowed. See Mayfield v. Koroghli, 124 Nev. 34, 184 P.3d 362, 369 (Nev. 2008)(adopting the reasoning set forth in Abdallah v. United Sav. Bank, 51 Cal.Rptr.2d 286(Cal.Ct.App. 1996)). In Mayfield, the Nevada Supreme Court held that "in an action in which a plaintiff pursues claims based on the same factual circumstances against multiple defendants, it is within the district court's discretion to determine whether apportionment is rendered impracticable by the interrelationship of the claims against the multiple defendants." Id. "The district court must, however, attempt to apportion the costs before determining that apportionment is impracticable." Id. Although Mayfield dealt with the issue of apportionment as to multiple defendants, the Nevada Supreme Court adopted the

---

[1] Moreover, Chevron notes that the "majority of Chevron's attorney fee expenditures were incurred in discovery," and "[n]o single deposition was focused entirely on a defense of a particular claim." Rather, the depositions and other discovery were all undertaken for "the discovery of and defense against the same underlying issues and facts common to both GCM's contract and tort claims." Id. at 5.

3

reasoning of the California Court of Appeals when it decided the same issue faced by this Court in Abdallah, 51 Cal.Rptr.2d at 293.

In Abdallah, the issue presented before the court was whether an award of attorney's fees had to be reduced because the respondents were entitled to attorney's fees only on the contract cause of action and not the related tort and RICO causes of action. 51 Cal.Rptr. 2d at 293. The court held that "[a]pportionment of a fee award between fees incurred on a contract cause of action and those incurred on other causes of action is within the trial court's discretion." Id. Under California law, "attorney's fees need not be apportioned when incurred for representation on an issue common to both a cause of action in which fees are proper and one in which they are not allowed." Id. As such, when claims are "inextricably intertwined," a court may find that it is "impracticable, if not impossible, to separate the multitude of conjoined activities into compensable or noncompensable time units." Id.

In this case, the Court finds that the causes of action asserted in GCM's Second Amended Complaint are so intertwined that it is impracticable to apportion the fee award based on time incurred defending the contract cause of action from the other remaining claims. Specifically, the allegations of GCM's complaint center on Chevron's contamination and remediation of the subject properties. These factual assertions underlie all 17 of GCM's causes of action and are at the core of GCM's claims for breach of the Environmental Agreement.

As to GCM's breach of contract claims, all three are based on the same factual assertion that Chevron allegedly failed to remediate the property in a timely and reasonable manner.[2] GCM alleged that as to the Lease Agreement, Site Access Agreement, and Environmental Agreement, Chevron failed to perform its obligations in a "timely, diligent, competent and reasonable manner, such that GCM has been denied the use and occupancy

---

[2] In its Opposition to Chevron's Motion for Summary Judgment, GCM asserts that it entered into the Site Access Agreement and Environmental Agreement "so that Chevron could remediate the contaminated property." Id. at 9. In this same filing, GCM argues that Chevron was liable for breach of all three separate agreements based on the same factual allegations - specifically, the contamination and remediation of the property. Id. at 7-18.

4

of both" of its properties. (Second Amended Complaint (#16) at 13). Moreover, GCM alleged that due to Chevron's contamination of the properties, "as well as its protracted, dilatory, incompetent and inefficient Remediation efforts, GCM has been unable to lease and/or sell the Properties." Id. As a result of Chevron's contamination and negligent remediation efforts, GCM alleged that Chevron breached "each and every agreement involving" the site, and that GCM incurred consequential damages "in the form of lost rents, out of pocket expenses, property taxes, utilities, and other maintenance, attorneys fees and costs, engineering fees and costs, lost profits and diminution in value." Id. at 14; see also (Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment (#61) at 7). Because all of GCM's breach of contract claims relate specifically to Chevron's contamination and alleged failure to properly remediate the property, the Court finds that it cannot apportion attorney's fees among those claims. Rather, they are based on the same factual circumstances making apportionment impracticable.

Moreover, a review of the tort causes of action show that they are based on the same allegations of contamination and remediation. Several of GCM's tort claims relate to property damages suffered as a result of Chevron's alleged misconduct on the leased property. These include: tortious injury to real property, negligence, nuisance, trespass, and strict liability for ultrahazardous activity. These claims all relate specifically to the contamination and remediation of the site and are based on the same factual circumstances as GCM's breach of contract claims. The remaining two tort claims are for negligent misrepresentation and tortious interference with prospective economic advantage. Although these torts do not assert claims for damage to the property, they are both based on Chevron's contamination of the site and its failed remediation efforts. Specifically, in its allegation of negligent misrepresentation, GCM argues that Chevron made false representations regarding the extent of the contamination and the status of the remediation. GCM's claim for tortious interference with prospective economic advantage alleges that Chevron interfered with a prospective contractual relationship because uncertainties existed relating to the contamination and remediation. As can be seen, all of GCM's tort claims are based on the same factual

underpinnings as the breach of the Environmental Agreement.

Based on the foregoing, the Court finds that apportionment of a fee award in this matter is impracticable because the various claims are inextricably intertwined. All 17 causes of action are based on common issues of fact and are interrelated to the claims made in GCM's breach of the Environmental Agreement. Because the claims are so interrelated, the Court cannot separate "the multitude of conjoined activities into compensable and noncompensable time units." See Mayfield, 184 P.3d at 369. As such, Chevron is entitled to an award of unapportioned reasonable attorney's fees in this matter.

## II. Reasonableness

Once a party has established that it is entitled to an award of attorney's fees, "[i]t remains for the district court to determine what fee is 'reasonable.'" Hensely v. Eckerhart, 461 U.S. 424, 433 (1983). The Ninth Circuit uses the "lodestar" method of calculating attorney's fees. See Caudle v. Bristow Optical Co., Inc., 224 F.3d 1014, 1028 (9th Cir. 2000)(citation omitted). The lodestar amount is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonably hourly rate. Van Gerwen v. Guarantee Mut. Life Co., 214 F.3d 1041, 1045 (9th Cir. 2007)(citing Hensley, 461 U.S. at 433). In determining the appropriate lodestar amount, the district court may exclude from the fee request any hours that are "excessive, redundant, or otherwise unnecessary." Id. at 946. In rare and exceptional cases, the district court may adjust the lodestar upward or downward using a multiplier based on facts not subsumed in the initial lodestar calculation. Id. The factors set out in Local Rule 54-16 ("LR 54-16") guide the court's analysis. See Schneider v. Elko County Sheriff's Dep't, 17 F.Supp.2d 1162, 1166 (D.Nev. 1998).

### A. Hourly Rate

In determining a reasonable hourly rate, the court should consider the skill, experience and reputation of the attorney requesting fees. See Chalmers v. City of Los Angeles, 796 F.2d 1205, 1210-11 (9th Cir. 1986); see also Welch, 480 F.3d at 946. The Ninth Circuit has repeatedly held that the determination of a reasonable hourly rate "is not made by reference to rates actually charged the prevailing party." Welch, 480 F.3d at 946. Rather, the

6

reasonable hourly rate should reflect "the prevailing market rates in the relevant community."[3] See Bell v. Clackamas County, 341 F.3d 858, 868 (9th Cir. 2003). Additionally, under LR 54-16, relevant factors to consider include: (1) the novelty and difficulty of the questions involved; (2) the skill required; (3) the preclusion of other employment; (4) the customary fee; and (5) the experience, reputation, and ability of the attorneys. See Mr. Rooter Corp. v. Mr. Plumber, 2008 WL 4533978 at *2 (D.Nev. 2008).

In this matter, Chevron was represented by the law firm of Filice Brown Eassa & McLeod LLP. According to its motion for attorney's fees, "[d]efense counsel has had a long standing professional relationship with Chevron," and as part of that relationship defense counsel created "a legal team" it uses to represent Chevron in litigation matters. (Motion for Attorney's Fees (#77) at 8). The legal team is comprised of lead counsel, an associate attorney and a paralegal under lead counsel's supervision. Id. "Lead counsel for Chevron is a litigation partner who has been practicing for over 25 years." Id. According to its motion, lead counsel, the associate attorney, and the paralegal's rates are fixed per counsel's agreement with Chevron and are reasonable as compared to the geographic market.[4] Id.

The lead counsel representing Chevron is Richard V. Normington. According to Mr. Normington's affidavit, he "charged Chevron a rate of $305 per hour" for his services. This is Mr. Normington's "normal hourly rate." (Declaration of Richard V. Normington in Support of Defendant Chevron U.S.A. Inc.'s Motion for Attorney's Fees (#79)). Mr. Normington attached a brief professional biography to his declaration indicating that he has over 25 years of experience "in a wide variety of civil litigation matters, with a particular emphasis in the areas of toxic tort defense, class actions, Superfund, environmental litigation, environmental law, and general civil litigation." Id. at Exhibit C. The hourly rate for the associate attorney working on

---

[3] As a general rule, the relevant community is the forum in which the district court sits. See Ilick v. Miller, 68 F.Supp.2d 1169, 1175 (D.Nev. 1999)(citing Barjon v. Dalton, 132 F.3d 496, 500 (9th Cir. 1997)). Rates outside the forum may be used "if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case." Id. (quoting Gates v. Deukmejian, 987 F.2d 1392, 1405 (9th Cir. 1992)).

[4] The law firm of Filice Brown Eassa & McLeod LLP is based out of Oakland, California.

the case, Mr. Daniel J. Nichols, was $230 per hour "which is the normal hourly rate billed" by the law firm for "the services of this associate." Id. According to Mr. Nichols professional biography, he was admitted to practice in California in 2005 and is a "litigation attorney specializing in environmental, product liability, and toxic tort litigation." Id. at Exhibit D. According to Mr. Normington's affidavit, Mr. Normington is familiar with the fees charged by other attorneys who practice in the same area and have a similar educational background and experience. According to Mr. Normington, the rates they charged Chevron for their services "are within the range of rates typically charged by such attorneys for similar work." Id.

Based on the foregoing, the Court finds that the hourly rate charged by defense counsel was reasonable in light of the skill and experience of the attorneys involved, as well as the difficulty of the questions presented in this case and counsel's customary fees.[5] Defense counsel provided evidence that its rates were reasonable and customary for this type of litigation. Although defense counsel did not present evidence that its rates are reasonable for the relevant community of Reno, Nevada, the Court finds in its own experience that the hourly rates charged by the aforementioned Oakland attorneys is within the prevailing rates in Reno. See Ilick, 68 F.Supp.2d at 1176 (stating that in the absence of any relevant evidence regarding whether the rates are in line with those prevailing in the community, the court may use its own experience as a guide in billing matters). As such, Chevron is entitled to attorney's fees based on the rates submitted by its defense counsel.

**B. Hours Worked**

The party seeking attorney's fees bears the burden of submitting evidence to support the hours worked and rates claimed. Van Gerwen, 214 F.3d at 1045. A district court should exclude from calculation of the fee award those hours that are "excessive, redundant, or otherwise unnecessary." Hensley, 461 U.S. at 434; Transgo, Inc. v. Ajac Transmission Parts Corp., 768 F.2d 1001, 1027 (9th Cir. 1985). Relevant LR 54-16 factors to consider include: (1) the results obtained and the amount involved; (2) the time and labor required; and (3) the

---

[5] In its opposition, GCM did not challenge the hourly rate or the number of hours worked submitted by Chevron.

8

novelty and difficulty of the questions involved. Although GCM has not contested the reasonableness of the hours expended, the Court has an independent obligation to review them to determine if they are reasonable in light of the work performed. See Sealy, Inc.v. Easy Living, Inc., 743 F.2d 1378, 1385 (9th Cir. 1984)(stating that a court may not uncritically accept a fee request).

Here, Chevron is seeking fees for 1,689.20 hours incurred during the course of the litigation. Attached to Chevron's motion are the contemporaneous time records kept by defense counsel in connection with the matter and the periodic bills for services sent to Chevron. (Declaration of Richard V. Normington in Support of Defendant Chevron U.S.A. Inc.'s Motion for Attorney's Fees (#79) at Exhibit A). According to Mr. Normington, in his professional opinion, "all of these services were reasonably necessary to secure the favorable result" that was obtained by Chevron. Id. at 3. Mr. Normington's declaration notes that "[d]iscovery in this case included many sets of written interrogatories, document productions and oral depositions. The parties exchanged thousands of pages of documents. In addition, twenty-eight depositions were taken of percipient and expert witnesses, including out of state witnesses." Id. In addition to extensive discovery, Chevron also states that the parties engaged in numerous pre-trial motion work prior to the Court's order granting Chevron summary judgment and attempted to mediate the dispute.

After reviewing the timesheet summary of Chevron's counsel, the Court finds that the total hours expended by Chevron's attorneys are not excessive. This case has been ongoing for over two years and involved 17 claims for relief asserted against Chevron. As noted, discovery in this case was extensive and involved complicated legal and factual issues. In addition, there was pre-trial motion work, as well as a mediation attempt. Moreover, counsel for Chevron obtained a favorable result for its client on all the claims asserted against it. As a result, the Court finds that Chevron is entitled to attorney's fees for the 1,689.20 hours incurred during the course of this litigation.

Thus, based on the foregoing, the Court finds that Chevron is entitled to attorney's fees pursuant to the provision in the Environmental Agreement in the amount of $367,596.35.

## CONCLUSION

For the foregoing reasons, IT IS ORDERED that Defendant Chevron U.S.A. Inc.'s Motion for Attorney's Fees (#77) is GRANTED.

DATED: This 24th day of June, 2009.

_____
United States District Judge