**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| GCM AIR GROUP, LLC,<br>Plaintiff,<br>v.<br>CHEVRON U.S.A., INC.,<br>Defendant. | ) | 3:07-CV-168-RCJ-WGC<br>**ORDER** |

Currently before the Court are Defendant Chevron U.S.A., Inc.'s ("Chevron") Motion for Summary Judgment (#132) and Plaintiff GCM Air Group, LLC's ("GCM") Motion to Strike the Motion for Summary Judgment (#138). The Court heard oral argument on November 1, 2011.

**BACKGROUND**[1]

Chevron leased property on Highway 28 in Incline Village from 1966 through 2003 for the purpose of operating a retail gas and service station. In 1993, motor fuel hydrocarbon contamination was discovered to be present in the soil and groundwater on the property where the service station was located. After the discovery, Chevron began the process of remediating the contamination under the supervision of the Washoe County District Health Department ("Health Department").

In 1997, four years after the discovery of the contamination, Chevron executed a Lease Modification Agreement with the then-owner of the property. The Lease Modification Agreement added several clauses relating to Chevron's liability to clean up the contamination

[1] These facts are taken from Judge Sandoval's March 2009 order granting Chevron summary judgment. (*See* Order (#74) at 1-3).

at the property. Specifically, Chevron agreed to remediate any covered contamination "in full compliance with all applicable laws and regulations." In addition, the modification included language that if Chevron engaged in corrective work to remediate the property, Chevron "shall be deemed to have satisfied its obligations" to remediate the contamination if Chevron corrected such contamination "to the satisfaction of the governmental agency having jurisdiction." Finally, the Lease Modification Agreement granted Chevron "an irrevocable license" for Chevron to perform remediation, ending when the contamination "is monitored or remediated as validly required by appropriate governmental agencies having jurisdiction."

In May 2002, GCM acquired the property where the service station was located and also an adjacent parcel, which had a restaurant. As a result of the acquisition, GCM became lessor to Chevron by assignment. According to GCM, at the time it acquired the property, it understood that the remediation had been proceeding as expected and that the contamination was being contained. Moreover, GCM understood that the remediation would need to continue until the contamination was reduced to acceptable levels.

In 2005, GCM and Chevron executed an Environmental Agreement. According to the Environmental Agreement, the parties agreed that:

> Chevron shall, at its sole cost and expense, perform or cause to be performed such investigation, monitoring, and remediation/clean up (the "Activities") of such motor fuel hydrocarbon contamination or other contamination as was caused by or resulted from Chevron's retail service station operations and as may be present on the Station Property and [Restaurant] Property (hereinafter "Contamination"), and as may be validly directed or agreed to by government agencies having jurisdiction (collectively "Agencies"), pursuant to applicable State and/or Federal statutes or regulations. Chevron shall prepare and submit a formal written work plan for approval by Agencies as part of the performance of its required Activities hereunder. When the performance of the Activities has been completed, Chevron shall submit a final report and request that a No Further Action letter (NFA) be issued.

The Environmental Agreement also provided that GCM would allow Chevron access to the property to perform remediation "at all reasonable times, and for so long as Chevron is obligated to perform the Activities." In addition, Chevron agreed that it would conduct all assessment, monitoring and clean up, as required by the governmental agencies, "in a manner consistent with safe operation and in compliance with the requirements and time frames

established by the Agencies." Finally, the agreement stated that:

> [It] shall be the sole agreement controlling and relating to Chevron's obligations relating to any Contamination that may be present on the Station Property and [Restaurant] Property, and that the provisions of this Agreement relating to Contamination shall replace and be substituted for any provisions and/or requirements that may relate to the Contamination contained in the above referenced written Lease with Owner.

Remediation on the property has continued since 1993.

**B. Procedural History**

In August 2007, GCM filed its second amended complaint ("SAC") and alleged 17 causes of action against Chevron, including: (1) breach of contract–Lease Agreement; (2) contractual breach of the implied covenant of good faith and fair dealing–Lease Agreement; (3) tortious breach of the implied covenant of good faith and fair dealing–Lease Agreement; (4) breach of contract–Site Access Agreement; (5) contractual breach of the implied covenant of good faith and fair dealing–Site Access Agreement; (6) tortious breach of the implied covenant of good faith and fair dealing–Site Access Agreement; (7) breach of contract–Environmental Agreement; (8) contractual breach of the implied covenant of good faith and fair dealing–Environmental Agreement; (9) tortious breach of the implied covenant of good faith and fair dealing–Environmental Agreement; (10) tortious injury to real property; (11) negligent misrepresentation; (12) tortious interference with the prospective economic advantage; (13) negligence; (14) private nuisance; (15) public nuisance; (16) trespass; and (17) strict liability for ultrahazardous activity. (SAC (#17) at 14-26). Judge Sandoval granted summary judgment in favor of Chevron on all counts. (Order (#74) at 4, 25). With respect to the trespass claim, Judge Sandoval found that "GCM's claims for tortious injury to property, nuisance, and trespass [were] barred by the statute of limitations." (*Id.* at 15). Judge Sandoval found that GCM "knew of the harm to the property or could have learned of such harm if it had acted in a reasonable diligent manner" at the time of purchase. (*Id.*). GCM appealed to the Ninth Circuit. (Notice of Appeal (#85)).

On June 9, 2010, the Ninth Circuit affirmed in part, reversed in part, and remanded "for further proceedings consistent" with its disposition. (Ninth Cir. Op. (#115) at 2). The Ninth

Circuit held that "[w]ith one exception–the trespass claim relating to the adjacent restaurant property–we hold that the district court did not err in granting Chevron summary judgment on GCM's claims." (*Id.*). The Ninth Circuit held that "[c]oncerning GCM's property damage claims relating to the leased station property, the record demonstrates GCM knew of or reasonably could have learned of sufficient facts supporting those claims when it acquired the properties in 2002 . . . Thus, the claims are barred by the statute of limitations." (*Id.* at 5). The Ninth Circuit held that "[a]s to GCM's separate trespass claim (Claim 16), whether GCM discovered or should have discovered facts supporting this claim before 2005 is a disputed material fact . . . [and] it cannot be determined on this summary judgment record that this claim is time-barred." (*Id.* at 5-6).

In April 2011, the parties filed a proposed joint pretrial order which stated:

> The parties have divergent views of the factual and legal issues that remain to be determined, because the parties do not agree on the legal effect of the summary judgment and subsequent appellate review. Both parties request that the Court resolve this disagreement, so that both parties can prepare for trial (if necessary) on the same set of issues.

(Proposed Pretrial Order (#129) at 2). The pending motions now follow.

**LEGAL STANDARD**

In reviewing a motion for summary judgment, the court construes the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). Pursuant to Fed.R.Civ.P. 56, a court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Material facts are "facts that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

The moving party bears the initial burden of identifying the portions of the pleadings and evidence that the party believes to demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). A party asserting that a fact cannot be or is genuinely disputed must support the

assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). Once the moving party has properly supported the motion, the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. The nonmoving party cannot defeat a motion for summary judgment "by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356.

## DISCUSSION

### I. GCM's Motion to Strike (#138)

GCM files a motion to strike Chevron's motion for summary judgment because it asserts that the deadline to file any dispositive motions in this case was three years ago. (Mot. to Strike (#138) at 1). GCM argues that Chevron's motion is late. (*Id.* at 2). In response, Chevron argues that, pursuant to the parties' proposed joint pretrial order, they have divergent views of the factual and legal issues that should go to trial in light of the Ninth Circuit remand. (Opp'n to Mot. to Strike (#140) at 2). Chevron argues that its motion for summary judgment raises issues of law that need to be resolved by the Court. (*Id.*).

The Court denies the motion to strike (#138) and will address the issues of law in Chevron's motion for summary judgment because the parties dispute what is before this Court post-remand.

**II. Chevron's Motion for Summary Judgment (#132)**

Chevron argues that, on remand, GCM is asserting that its trespass claim extends to the entire property and not just to the restaurant property. (Mot. for Summ. J. (#132-1) at 5). Chevron argues that if the claim for trespass encompasses the entire property then the claim is barred by the statute of limitations pursuant to the Ninth Circuit's opinion and Nevada law. (*Id.* at 14-15). With respect to the restaurant property trespass claim, Chevron argues that GCM alleged negligent trespass in the complaint. (*Id.* at 15). Chevron argues that GCM's negligent trespass claim is barred by the 1997 Lease Modification, the 2005 Environmental Agreement, and this Court's previous adjudication of the contract and tort claims. (*Id.*). Chevron asserts that the negligent trespass claim is barred by the Court's prior adjudication that GCM's negligence claim was barred by the economic loss doctrine. (*Id.* at 19).

In response, GCM argues that its trespass claim encompasses both properties and that its claim is not barred by the statute of limitations. (Opp'n to Mot. for Summ. J. (#139) at 11, 15). GCM argues that the contracts do not bar its trespass claim because any contamination left on GCM's properties constitutes trespass. (*Id.* at 14). GCM argues that Chevron's refusal to completely remove the contamination constitutes trespass. (*Id.* at 16).

In reply, Chevron argues that GCM's complaint states a claim for negligent trespass, but notes that GCM is now trying to argue that its trespass claim is for intentionally failing to remove all known contamination. (Reply to Mot. for Summ. J. (#142) at 8-9).

As an initial matter, the Ninth Circuit specifically remanded the trespass claim with respect to the restaurant property only because there was an issue of disputed material fact as to whether the statute of limitations barred the claim. (*See* Ninth Cir. Op. (#115) at 2, 5). The Ninth Circuit found that GCM's property damage claims to the leased station property were barred by the statute of limitations because the record demonstrated that GCM knew of or reasonably could have learned of sufficient facts supporting those claims when it acquired the properties in 2002. (*See id.* at 5). As such, this remand is limited to the trespass claim on the restaurant property.

In the complaint, GCM does not identify whether its claim is for intentional or negligent

trespass. However, the language used to describe the cause of action states a claim for negligent trespass.[2] *See Schumann v. Martin*, 302 P.2d 284, 285 (Nev. 1956) (recognizing a cause of action for negligent trespass). To illustrate, GCM alleged that "Chevron caused the Contamination located on the Station Property and the Contamination has migrated to the Restaurant Property and potentially an adjacent parcel of real property located to the south of the Station Property." (SAC (#16) at 25-26). GCM alleged that "Chevron's dilatory, deficient, incompetent and unreasonable attempts to remediate the Station Property have resulted in the plume of Contamination invading the Restaurant Property." (*Id.* at 26).

In this case, GCM's negligent trespass claim is barred by the economic loss doctrine. The "economic loss doctrine marks the fundamental boundary between contract law, which is designed to enforce the expectancy interests of the parties, and tort law, which imposes a duty of reasonable care and thereby [generally] encourages citizens to avoid causing physical harm to others." *Terracon Consultants W., Inc. v. Mandalay Resort Grp.*, 206 P.3d 81, 86 (Nev. 2009). In its interpretation of Nevada's economic loss doctrine, the Ninth Circuit stated that Nevada is "generally consistent with the principles discernable in the case law of other jurisdictions." *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 879 (9th Cir. 2007). According to the Ninth Circuit, "Nevada applies the economic loss doctrine to bar recovery in tort for purely monetary harm in product liability and negligence cases unrelated to product liability." *Id*. The court went on to hold that "Nevada law may also bar recovery for other tort claims where the plaintiff's only complaint is that the defendant failed to perform what was promised in contract." *Id.*

Here, GCM's negligent trespass claim is couched in the same terms as its breach of

---

[2] Pursuant to the Restatement (Second) of Torts "[o]ne who recklessly or negligently . . . enters land in the possession of another or causes a thing or third person so to enter is subject to liability to the possessor if, but only if, his presence or the presence of the thing or the third person upon the land causes harm to the land, to the possessor, or to a thing or a third person in whose security the possessor has a legally protected interest." Restatement (Second) of Torts § 165. "The harm may be an impairment of the physical condition of the land or an invasion occurring on the land of some other legally protected interest of the possessor, connected with his interest of exclusive possession." Restatement (Second) of Torts § 165, cmt. c.

contract claims. To illustrate, GCM's breach of contract claim under the Environmental Agreement states that Chevron "breached the Environmental Agreement by failing to perform its remediation obligations in a timely, diligent and reasonable manner." (SAC (#16) at 19). GCM's breach of contract claim under the Lease Agreement also states that Chevron breached the agreement by "failing to perform its remediation obligations in a timely, diligent and reasonable manner." (*Id.* at 15). As such, because GCM's negligent trespass claim essentially states that Chevron failed to perform what was promised in their contract agreements, the claim is barred by the economic loss doctrine under Nevada law. Moreover, the Ninth Circuit affirmed this Court's findings that Chevron did not breach any of the agreements. (*See* Order (#74) at 5, 7, 10-14; Ninth Cir. Op. (#115) at 2-3). Accordingly, the Court grants summary judgment in favor of Chevron on the remanded trespass claim.

However, the Court grants GCM leave to file an amended complaint for the purposes of adding a request for declaratory relief that Chevron comply with the Environmental Agreement as interpreted by the Court and a request for specific performance. Leave to amend is granted only as to these two requests.

Upon filing of the amended complaint, this Court will issue declaratory relief to GCM and order Chevron to comply with the Environmental Agreement. As noted above, the Environmental Agreement requires that Chevron

> at its sole cost and expense, perform or cause to be performed such investigation, monitoring, and remediation/clean up (the "Activities") of such motor fuel hydrocarbon contamination or other contamination as was caused by or resulted from Chevron's retail service station operations and as may be present on the Station Property and [Restaurant] Property (hereinafter "Contamination"), and as may be validly directed or agreed to by government agencies having jurisdiction (collectively "Agencies"), pursuant to applicable State and/or Federal statutes or regulations. Chevron shall prepare and submit a formal written work plan for approval by Agencies as part of the performance of its required Activities hereunder. When the performance of the Activities has been completed, Chevron shall submit a final report and request that a No Further Action letter (NFA) be issued.

Chevron also agreed that it would conduct all assessment, monitoring and clean up, as required by the governmental agencies, "in a manner consistent with safe operation and in compliance with the requirements and time frames established by the Agencies."

To ensure compliance with the contract, the Court will order Chevron to submit to this Court a final remediation plan approved by the Agencies. The final approved plan must be consistent with Chevron's duties under the Environmental Agreement, must include a monitoring provision, and must include a remediation provision that contains a standard for Chevron to follow and a deadline for which the Agencies will issue a No Further Action letter. This lawsuit will remain open until this Court approves the final remediation plan adopted by the Agencies. The Court finds that this relief is consistent with the Ninth Circuit remand and the economic loss doctrine.

The Court further notes that there does not appear to be any need for a jury trial, but finds that a bench trial may be needed to determine the extent of the declaratory relief.

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

**CONCLUSION**

For the foregoing reasons, IT IS ORDERED that Chevron's Motion for Summary Judgment (#132) is GRANTED.

IT IS FURTHER ORDERED that GCM's Motion to Strike the Motion for Summary Judgment (#138) is DENIED.

IT IS FURTHER ORDERED that GCM file an amended complaint to add a request for declaratory relief and specific performance within 15 days of the issuance of this order.

IT IS FURTHER ORDERED that, upon receipt of the amended complaint, this Court will GRANT GCM declaratory relief and order Chevron to comply with the Environmental Agreement.

IT IS FURTHER ORDERED that, upon receipt of the amended complaint, this Court will order Chevron to submit a final-approved remediation plan, as discussed above, to this Court.

IT IS FURTHER ORDERED that this lawsuit will remain open until this Court approves the final remediation plan.

DATED: This _4th_ day of November, 2011.

R. Jones

United States District Judge